**FORT WORTH & D. C. RY. CO. et al. v.
AMMONS et al.**

No. 5897.

Court of Civil Appeals of Texas. Amarillo.

Nov. 1, 1948.

Rehearing Denied Dec. 6, 1948.

408

Klett, Bean, Evans & Justice, of Lubbock, and Seth Barwise, of Fort Worth, for appellants.

Lindsey, Smith & Brock and Robt. A. Sowder, all of Lubbock, for appellees.

LUMPKIN, Justice.

This appeal is from a judgment of the District Court of Lubbock County, Texas, in which the appellants, Forth Worth and Denver City Railway Company and Fort Worth & Denver South Plains Railway Company, are perpetually enjoined and restrained from extending an industrial spur track into a C district as designated by the Zoning Ordinance of the City of Lubbock, or from entering upon any construction or extension of their tracks without obtaining a permit from the City of Lubbock as required by the City's Building Code. The judgment declares that the Zoning Ordinance is a valid and constitutional ordinance, duly enacted by the City of Lubbock under authority of law; and that the Building Code is a valid and duly enacted ordinance of the City of Lubbock and is applicable to the appellants since the extension of a railway spur is construction within the meaning of the ordinance. The suit, in which this Declaratory Judgment was entered, was originated by the appellees, Alton J. Ammons and eighteen others whose property adjoins the appellants' right of way. From the court's judgment the appellants duly excepted and have perfected their appeal to this court.

A study of the zoning map of the City of Lubbock reveals that the appellants' tracks enter the city from the southeast and turn due north between Avenues G and F. At this point of turning a spur track continues from the main line in a southwesterly direction to approximately forty-five feet south of 29th Street. From this terminal the map shows that the appellants'

right of way for the spur extends to 34th Street, thence south one half mile beyond the city's limits. There is no trackage laid on this last portion of the right of way. From the point of turning to the end of the rails, the spur line is within a J zone; however, that portion which lies between 31st and 34th Streets, and which contains no trackage, is within a C zone. This is the strip of land in controversy. The property immediately adjacent to this strip is owned by the appellees. Under the Zoning Ordinance a J zone is classified as industrial, while a C zone is set aside as residential. There is no business or industry along the strip; however, in the J, or industrial district, lying immediately north of the Summerhill and Flynn Place Additions, notably the Hufstedler Sub-division, there are located warehouses, and there is evidence of one business concern established south of 34th Street.

This strip between the Summerhill and Flynn Additions is about 54 feet wide. It was acquired by the appellants on May 27, 1927, by general warranty deed. At that time the two additions were not within the city limits and few houses were located in the area. It is bordered on the west by blocks 1 and 6 of the Summerhill Addition and on the east by blocks 5, 6, and 7 of the Flynn Place.

On March 13, 1941, the City of Lubbock passed a Zoning Ordinance which placed blocks 1 and 6 of the Summerhill Addition, the railroad property, and the entire Flynn Place in Zone C, thereby restricting this area to residential uses listed as one and two-family residences and apartment houses of limited heights. The appellees in their original petition allege that they relied upon the Zoning Ordinance in building their homes and improving their property; that the appellants, in violation of the ordinance, were preparing to extend their spur along the right of way described; and that such would depreciate the value of the appellees' property, and that this area would no longer be suitable for the uses for which it was restricted by the zoning ordinance. The action was brought under the provisions of the Uniform Declaratory Judgment Act, Article 2524—1, Vernon's Annotated Civil Statutes. While this suit was pending

and before it had been called for trial, the appellants started laying track on the strip. The appellees filed an injunction suit which resulted in the trial court granting a temporary restraining order maintaining the status quo until the court could decide the matters presented in appellees' original petition. Afterwards the City of Lubbock intervened and adopted the appellees' pleadings. Trial was to the court without the intervention of a jury and resulted in the judgment heretofore mentioned.

In their first point of error the appellants attack the court's judgment on the theory that a municipality cannot pass a Zoning Ordinance to prevent a railroad from exercising its right of eminent domain; that the Legislature Act granting a railroad the power of eminent domain to take such property as it may deem necessary for public use is superior to a city ordinance which would nullify the act of the legislature.

Eminent Domain is one of the inalienable rights of sovereignty. It is the power to take private property for public use. However, it is to be distinguished from taxation and police authority, other distinct powers by which private property may be appropriated. More precisely, eminent domain is the right of the state, or of those to whom the power has been delegated, to condemn private property for public use, and to appropriate the ownership and possession of the property upon paying the owner a due compensation. 29 C.J.S., Eminent Domain, § 1, page 776.

Zoning Ordinances as enacted by home rule cities, are an exercise of the police power delegated to the cities by the state. It has been repeatedly held that the police power of the state may be delegated for appropriate purposes to the municipalities and that such power may be validly exercised by the municipalities for the protection of the health, safety, comfort, and welfare of the public. City of New Braunfels et al. v. Waldschmidt et al., 109 Tex. 302, 207 S.W. 303; Spann v. City of Dallas et al., 111 Tex. 350, 235 S.W. 513, 19 A.L.R. 1387. A city in exercising the police power delegated to it is exercising the powers of the state government within the

limits of the city. Peck v. City of Austin, 22 Tex. 261, 73 Am.Dec. 261. Articles 1011a through 1011j, Vernon's Annotated Civil Statutes, are Acts of the Legislature authorizing the legislative bodies of the cities and incorporated villages to regulate and restrict the height, number of stories and size of buildings and other structures, the size of yards, courts and other open spaces, the density of population, the location and use of buildings, structures and land for trade, industry, residence or other purposes. These articles constitute the zoning laws of the State of Texas and constitute a general law applicable to cities operating under the home rule amendment. The City of Lubbock is such a city. Peters, Mayor, et al. v. Gough et al., Tex.Civ.App., 86 S.W.2d 515.

■ Eminent domain and the exercises of the police power have much in common. The one deprives the owner of the right to obstruct the public necessity by refusing to part with his property, or a right in property, when needed for public use, while the other prevents the individual from using his property in a manner contrary to the general comfort and protection of the public. Under eminent domain property is taken from its owner and transferred to a public agency to be used as its own. Police power is usually exerted to merely regulate the use and enjoyment of the property by the owner, or if he is deprived of this property outright, it is not taken for public use but destroyed in order to promote the general welfare. In neither case is the owner entitled to compensation. The absence of compensation makes the police power much harsher in operation than the power of eminent domain and, hence, subject to stricter limitations. State ex rel. Austin v. Thomas, Mayor, et al., 96 W.Va. 628, 123 S.E. 590, 38 A.L.R. 1490; Keller v. City of Corpus Christi, 50 Tex. 614, 32 Am.Rep. 613; Page et al. v. Tucker, County Judge, et al., Tex.Civ.App., 218 S.W. 584, affirmed Tex.Com.App., 288 S.W. 809.

■ Provided spurs or side tracks are necessary to the performance of its duty to serve the public generally, and provided a railroad company is legally incorporated, the right of eminent domain is available to railroads to secure rights of way for spurs and side tracks. Article 6316a, Vernon's Annotated Civil Statutes; Texas & N. O. R. Co. v. Schoenfeld, 136 Tex. 173, 146 S.W.2d 724, and the many cases there cited. It is not contended that the appellants are not incorporated under the law. Our courts have held that in exercising the right of eminent domain the state delegates to the railway the discretion of selecting the sites upon which the road shall be located. Galveston, H. & S. A. Ry. Co. v. City of Eagle Pass, Tex.Com.App., 260 S.W. 841; Brazos River Conservation & Reclamation Dist. v. Harmon et al., Tex. Civ.App., 178 S.W.2d 281. As stated by the Supreme Court in Housing Authority of City of Dallas et al v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 88, 130 A.L.R. 1053, "The law is well established in this state that where the power of eminent domain is granted, a determination by the condemner of the necessity for acquiring certain property is conclusive in the absence of fraud * * * (and) 'When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance.'"

From the record it appears that the particular reason given for the extension of the appellants' rails upon the strip of land between 31st and 34th Streets and beyond was to serve Conley-Nichols, a business concern located south of 34th Street. There was testimony to the effect that this portion of the railway right of way was laid off at the same time the main line was surveyed; that the appellants had owned the property and paid taxes on it since that time; that the appellants had no other right of way that could be used to serve the industrial needs in that section; that there was a need for the side track or spur; and that it would be disastrous for both the appellants and the public if the railways were not permitted to use the property for the purposes for which it was intended.

■ In our opinion the appellants were acting within the scope of the powers accorded them under the eminent domain statute in extending their rails upon the strip of land in controversy. There is no evidence that the appellants abused the

power given them. As we have seen the authority of the appellants to use the strip is a grant from the state, and the right to locate its line of road on the place of its selection is delegated to the appellants by the state. Railroads, under Article 10, Section 2, of the Texas Constitution, Vernon's Ann.St., are declared public highways. The State of Texas, as a representative of the public, has a sovereign interest in railroads, the same as it does in highways or streets. Under circumstances in which the state has a sovereign interest or general concern and has enacted constitutional and legislative regulations covering these interests, our courts have held that a municipality is prohibited from passing ordinances in conflict with these state regulations. In our opinion that portion of the City of Lubbock's Zoning Ordinance which places the strip in a C or residential zone is in conflict with appellants' authority to select and use the strip as their right of way. City of Beaumont v. Fall et ux., 116 Tex. 314, 291 S.W. 202; City of Lubbock v. South Plains Hardware Co. et al., Tex.Civ. App., 111 S.W.2d 343; Prescott v. City of Borger et al., Tex.Civ.App., 158 S.W.2d 578, writ refused.

The Building Code of the City of Lubbock, section 201, provides, "No person shall erect or construct or proceed with the erection or construction of any building or structure nor add to * * * extend or demolish any * * * structure * * * without first obtaining a building permit. * * *" In section 401, chapter 4, part 2, *structure* is defined as "that which is built or constructed * * * or any piece of work artificially built up or composed of parts joined together in some definite manner." We believe this definition covers the construction of a railroad track. In our opinion the appellants should make an application for a permit as prescribed by the Building Code.

For the reasons given the judgment appealed from is reversed and the injunction dissolved. The appellants should comply with such provisions of the Building Code of the City of Lubbock as may be necessary to the proper use of the strip of property in controversy. Because of our holding, it is unnecessary to discuss the appellants' remaining points of error.