Wilmer G. GLEGHORN, Petitioner,

v.

CITY OF WICHITA FALLS, et al., Respondents.

No. B–5844.

Supreme Court of Texas.

Nov. 3, 1976.

Locke, Purnell, Boren, Laney & Neely, Joseph H. Staley, Jr. and Orrin L. Harrison, Dallas, D. J. Brookreson, II, Seymour, for petitioner.

H. P. Hodge, Jr., City Atty., Fillmore, Parish, Martin, Kramer & Fillmore, Elmer H. Parish, Wichita Falls, for respondents.

## PER CURIAM ON MOTION FOR REHEARING OF APPLICATION FOR WRIT OF ERROR

Our Per Curiam opinion of July 7, 1976, is withdrawn and the following is substituted therefor.

This is a condemnation suit. The City of Wichita Falls and the Wichita County Water Improvement District No. 2, Condemnors, sought to enlarge an existing flowage easement over a portion of Wilmer Gleghorn's land above the Lake Kemp reservoir and dam. In the trial court, Gleghorn recovered a judgment for $200,000, and the Condemnors appealed.

The Court of Civil Appeals reversed and remanded on two grounds. 531 S.W.2d 879. We agree with the result but disagree with the reason given for the holding that the trial court made an impermissible comment on the weight of the evidence when it submitted the following instructions to the jury:

"You are instructed that the easement being taken by the City of Wichita Falls and the Wichita County Water Improvement District No. 2 from the Defendant between contours 1153.5 ft. m.s.l. up to and including contour lines 1163 ft. m.s.l. totals 469.16 acres and *is to be used for the purpose of being submerged by water collected and impounded by the Lake Kemp storage dam which is presently being raised* and it is also to serve or partially serve as a precautionary measure against wave action, surge, and backwater.

"You are further instructed that the presumption is that the Wichita County Water Improvement District No. 2 and the City of Wichita Falls *can* exercise their rights and use of the 469.16 acres being taken from Defendant to the full-

est extent of the rights acquired which are described in this charge, which rights include the right of being submerged by water." [Emphasis added.]

The use of the word "can" in the second paragraph of the above instructions was the sole reason given by the Court of Civil Appeals for holding that the instruction constituted a comment on the weight of the evidence. It cited as controlling authority our decision in *City of Pearland v. Alexander,* 483 S.W.2d 244 (Tex.1972), in which we condemned the use of the word "will" in an instruction that the jury was to presume that "the City of Pearland *will* exercise its rights and use and enjoy this property to the full extent for such a sewerage disposal plant." [Emphasis added.] There is a distinction in the use of the word "will" in the *City of Pearland* instruction and the use of the word "can" in the above instruction. "Will" denotes certainty while "can" denotes permissiveness or "the right to." We recognize the distinction in our quotation from *Nichols* in *City of Pearland* as follows:

"The use to which the condemnor proposes to devote the property taken must be considered in ascertaining the damage to the remainder area . . . . The condemnee is entitled to consideration of the damage which the condemnor *has a right to* inflict although it cannot be assumed that the property *will* be put to its most damaging use." [Emphasis added.] 4-A Nichols on Eminent Domain sec. 14.-24 (1971).

In applying the willing-seller willing-buyer test of market value, those factors which would reasonably be given weight in negotiations between a seller and a buyer are to be considered. *City of Pearland v. Alexander, supra. City of Austin v. Cannizzo,* 153 Tex. 324, 267 S.W.2d 808 (1954). *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194 (1936). The rights which the Condemnors "can" exercise as a result of the taking would be such a factor. The use of the word "can" in the instruction did not constitute a comment on the weight of the evidence. However, the first paragraph of

the above instruction was objectionable as a direct comment on the weight of the evidence rather than a proper explanatory instruction under Rule 277, because it advises the jury that "the easement being taken . . . *is to be used* for the purpose of being submerged by water collected and impounded by the Lake Kemp storage dam which is presently being raised . . ." rather than advising that the easement *can be used* for such purposes whenever and to the extent that the elevation of the water in the Lake Kemp reservoir exceeds 1153.5 ft. m.s.l. at the Lake Kemp dam, and whenever necessary to serve or partially serve as a precautionary measure against wave action, surge, and backwater.

The second paragraph is likewise objectionable because of the phrase "which rights include the right of being submerged by water." According to the Statement of Taking, plaintiffs sought only an additional flowage easement within contour lines 1153.5 ft. and 1163 ft. m.s.l. rather than a right to permanently submerge such area. There was no evidence of a reasonable probability that the area would be permanently flooded or submerged by water. There was evidence that the possibility of occasional flooding would be infrequent in the future. If the rights taken and the proof remain substantially the same upon a retrial, the instructions should be corrected in accordance with this opinion.

The Application for Writ of Error is refused, no reversible error, and the motion for rehearing is overruled.